MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
TERESA ALLEN (State Bar No. 264865)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Facsimile:  (510) 452-5510
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARIO GONZALEZ, Deceased, through his Successor in Interest, M.G.C., a minor through his mother and Next Friend Andrea Cortez, individually and as successor in interest for MARIO GONZALEZ, Deceased,<br><br>          Plaintiff,<br><br>vs.<br><br>CITY OF ALAMEDA, a public entity; FORMER CITY OF ALAMEDA INTERIM POLICE CHIEF RANDY FENN, in his individual and official capacities; ALAMEDA POLICE OFFICERS ERIC MCKINLEY, JAMES FISHER, and CAMERON LEAHY, and DOES 1-10, Jointly and Severally,<br><br>          Defendants. | Case No.: 4:21-cv-09733-DMR<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** |

Plaintiff, by and through his attorneys, HADDAD & SHERWIN LLP, for his First Amended Complaint against Defendants, states as follows:

## JURISDICTION

1.      This is a civil rights, wrongful death, and survival action arising from Defendants' unlawful seizure and use of excessive and unnecessary force and tactics, by unlawfully arresting MARIO ALBERTO GONZALEZ ARENALES ("MARIO GONZALEZ"), deceased, and subjecting him to asphyxiating restraint and unwarranted deadly force, resulting in his death on April 19, 2021, in Alameda County, California.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; the First, Fourth, and Fourteenth Amendments to the United States Constitution; and the laws and Constitution of the State of California, including but not limited to California Civil Code §§ 52.1 and 52, and California common law.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT

2.      A substantial part of the events and/or omissions complained of herein occurred in Alameda County, California, and pursuant to Northern District Civil Local Rule 3-2(d), this action is properly assigned to either the Oakland Division or the San Francisco Division of the United States District Court for the Northern District of California.

## PARTIES AND PROCEDURE

3.      Plaintiff M.G.C., a minor, is the now five-year-old son and only child of MARIO GONZALEZ, Deceased, and a resident of the State of California.  Plaintiff M.G.C., by and through his mother and Next Friend, Andrea Cortez, brings these claims individually for wrongful death and violation of his personal rights, and as successor in interest for his father, Decedent MARIO GONZALEZ, asserting survival claims for MARIO GONZALEZ, Deceased.  He brings these claims under state and federal law.

4.      Plaintiff M.G.C. brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq., which provides for survival actions.  Plaintiff M.G.C also brings these claims pursuant to California Code of Civil Procedure §§ 377.60 et seq., which provides for wrongful death actions.  Plaintiff M.G.C. also brings claims for violation of his personal rights to familial association under the United States Constitution.  Plaintiff M.G.C. further brings these claims as a Private Attorney General, to vindicate not only his and his father's rights, but others' civil rights of great importance.

5.      Defendant CITY OF ALAMEDA ("CITY") is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Alameda Police Department ("APD") which employs other defendants in this action.

6.      Defendant Former City of Alameda Interim Police Chief RANDY FENN, at all material times, was employed as Interim Police Chief of the APD by Defendant CITY OF ALAMEDA, and he was acting within the course and scope of that employment.  As Interim Police Chief of the APD, Defendant FENN was a policy-making official for Defendant CITY with the power to make official and final policy for the APD.  Defendant FENN is being sued in his individual and official capacities.

7.      Defendant ERIC MCKINLEY, at all material times, was employed as a police officer at APD and was acting within the course and scope of that employment.  He is being sued in his individual capacity.

8.      Defendant JAMES FISHER, at all material times, was employed as a Police Officer at APD and was acting within the course and scope of that employment.  He is being sued in his individual capacity.

9.      Defendant CAMERON LEAHY, at all material times, was employed as a Police Officer at APD and was acting within the course and scope of that employment.  He is being sued in his individual capacity

10.      The true names and capacities of Defendants sued herein as DOES 1–10 ("DOE defendants") are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names,

1  and Plaintiff will seek leave to amend this Complaint to show their true names and capacities when

2  the same are ascertained.  Each DOE defendant was an employee/agent of Defendant CITY, and at

3  all material times acted within the course and scope of that relationship.

4      11.   Plaintiff is informed and believes, and thereon alleges that each of the Defendants

5  sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events

6  and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff

7  and Decedent.  Further, one or more DOE defendants was at all material times responsible for the

8  hiring, training, supervision, and discipline of other defendants, including Defendants MCKINLEY,

9  FISHER, LEAHY, and DOES 1-10.

10     12.   Plaintiff is informed and believes, and thereon alleges, that each of the Defendants

11  was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or

12  alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the

13  course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges,

14  that each of the Defendants herein gave consent, aid, and assistance to each of the remaining

15  Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged

16  herein, except as may be hereinafter otherwise specifically alleged.

17     13.   At all material times, each Defendant was jointly engaged in tortious activity, and

18  was fundamentally involved in, and an integral participant to, the events and violations of rights

19  described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and

20  other harm.

21     14.   The acts and omissions of all Defendants as set forth herein were at all material times

22  pursuant to the actual customs, policies, practices, and procedures of Defendant CITY.

23     15.   At all material times, each Defendant acted under color of the laws, statutes,

24  ordinances, and regulations of the State of California.

25     16.   Plaintiff timely and properly filed a tort claim pursuant to Cal. Gov. Code § 910 et

26  seq., and this action is timely filed within all applicable statutes of limitation.

27

28

17.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

**<u>GENERAL ALLEGATIONS</u>**

18.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

19.     On April 19, 2021 – the day before a jury found former Minneapolis police officer Derrick Chauvin guilty of murder for the nationally notorious in-custody restraint death of George Floyd – Defendant Alameda Police Officers Eric McKinley, James Fisher, and Cameron Leahy unlawfully seized and subjected MARIO GONZALEZ to excessive force, suffocating restraint, and unwarranted deadly force, causing MARIO GONZALEZ's death from restraint asphyxia.   This incident happened in or about Scout Park, a very small public park located near 802 Oak Street, Alameda, CA.  This was at least the second restraint asphyxiation caused by APD officers in less than three years.  In December 2018, APD officers killed Iraq War Veteran Shelby Gattenby after Tasing and restraining him in a prone position with officers' weight on his back, with one officer telling another to use his body weight to hold Mr. Gattenby down.  After Mr. Gattenby's killing, Defendant City of Alameda insisted that its officers' conduct was appropriate, and failed to reform its policies, practices, and training to prevent similar deaths in the future.

20.     On April 19, 2021, at or around 10:20 a.m., a resident of Oak Street in Alameda, CA, placed a call for service with APD about MARIO GONZALEZ's lawful presence in a public park, Scout Park, across a sidewalk from the caller's home.  The caller stated that there was a man (MARIO GONZALEZ) talking to himself and not making any sense, standing near the caller's front yard fence.  The caller stated that the man was Hispanic and was not doing anything wrong, but that the man's presence was scaring the caller's wife.  The caller's house is located where Oak Street meets Scout Park, and is across a public sidewalk from the public park where MARIO GONZALEZ was standing.  Shortly thereafter, another resident called APD to report a similarly-described man at Scout Park who appeared to be breaking security tags off of alcohol bottles in his possession.

21.     At or around 10:42 a.m. on April 19, 2021, Defendant Alameda Police Officer ERIC MCKINLEY arrived at Scout Park in response to the above-described calls for service and encountered MARIO GONZALEZ peacefully standing in the park.  Defendant MCKINLEY had no information that MARIO GONZALEZ was involved in any crime.  Defendant MCKINLEY approached MARIO GONZALEZ and asked if he was feeling alright.  MARIO GONZALEZ confirmed that he was alright, but also stated he did not know what was going on.  MARIO GONZALEZ appeared confused, and possibly intoxicated, throughout his interaction with Defendants.  Defendant MCKINLEY questioned MARIO GONZALEZ, asking him his name, what he was doing in the park, and other questions.  MARIO GONZALEZ was calm and polite as he talked with Defendant MCKINLEY, but he had difficulty maintaining his focus, often giving vague or seemingly irrelevant answers before becoming distracted and/or trailing off.  At one point during the interaction, Defendant MCKINLEY claimed he needed to confirm MARIO GONZALEZ's identity, so that MARIO GONZALEZ could "be on [his] merry way."  MARIO GONZALEZ replied, "merry-go-round?"  Defendant MCKINLEY continued to detain and question MARIO GONZALEZ even after MARIO GONZALEZ confirmed that he was not in need of any assistance and Defendant MCKINLEY had developed no facts or reasonable suspicion to believe MARIO GONZALEZ was involved in any crime.

22.     There was a Walgreen's basket of liquor bottles on the ground nearby.  Roughly two minutes into his contact with MARIO GONZALEZ, Defendant MCKINLEY instructed Defendant Alameda Police Officer JAMES FISHER—who had not yet arrived on the scene—via radio to check with employees at the Walgreen's Drug Store (across the street) regarding whether they had had anyone recently "walk off" with stolen alcohol or merchandise.  Two minutes and thirty seconds later, after speaking with employees at Walgreen's, Defendant FISHER notified Defendant MCKINLEY via radio that Walgreen's had not had anyone walk off with stolen merchandise.

23.     Though somewhat disoriented, MARIO GONZALEZ remained peaceful throughout the encounter and made no comments, gestures, or movements that could in any way be perceived as threatening to Defendant MCKINLEY or others, including later responding officers.  Defendant

1   officers never had any information whatsoever that MARIO GONZALEZ was involved in any

2   crime.

3          24.     Roughly seven minutes after Defendant MCKINLEY initiated contact with MARIO

4   GONZALEZ, Defendant FISHER arrived on the scene.  The two officers continued to demand

5   MARIO GONZALEZ's name and whether he had any identification.  About two minutes after

6   Defendant FISHER's arrival, without reasonable suspicion, probable cause, or any legal basis,

7   Defendants FISHER and MCKINLEY escalated the otherwise calm interaction by using force, each

8   grabbing one of MARIO GONZALEZ's arms and then trying to force them behind his back by

9   using pain compliance holds.  MARIO GONZALEZ still had done nothing threatening to anyone,

10  and Defendants had no lawful basis to believe he had committed any crime.  As the officers

11  attempted to force MARIO GONZALEZ's hands behind his back, despite having no lawful cause to

12  arrest him, MARIO GONZALEZ appeared to flinch and stiffen his arms.  Still, MARIO

13  GONZALEZ did not actively resist, and remained non-threatening, maintaining a benign tone.

14         25.     After failing to strong-arm MARIO GONZALEZ into handcuffs, Defendants

15  MCKINLEY and FISHER forcefully took MARIO GONZALEZ to the ground, where they quickly

16  pinned him face-down and on his stomach in a prone position.  Defendant MCKINLEY climbed on

17  top of MARIO GONZALEZ's legs while retaining control of MARIO GONZALEZ's left arm.

18  Defendant FISHER got on top of MARIO GONZALEZ's back and wrestled MARIO

19  GONZALEZ's right arm out from under his body.  The officers kept MARIO GONZALEZ in a

20  prone position, and in multiple pain compliance holds, while handcuffing him.  After wrestling on

21  top of MARIO GONZALEZ's back for nearly two minutes, Defendant FISHER successfully

22  handcuffed MARIO GONZALEZ and Defendant MCKINLEY locked the handcuffs.  Defendant

23  FISHER next rested on top of MARIO GONZALEZ for roughly 30 seconds, then shifted his

24  positioning, placing his knee onto MARIO GONZALEZ's upper back and shoulder area and

25  applying significant body weight to keep MARIO GONZALEZ pinned down in a prone position,

26  handcuffed.  Defendant MCKINLEY held MARIO GONZALEZ down by his left elbow so he

27  could not roll over.

28

26.     With MARIO GONZALEZ handcuffed, Defendant FISHER used his body weight, applied through his knee, elbows, forearms, and hands, to continue pinning MARIO GONZALEZ on the ground in a prone, asphyxiating position for nearly three additional minutes, until MARIO GONZALEZ became unresponsive.  During this time, Defendant MCKINLEY, positioned to MARIO GONZALEZ's left, likewise applied his body weight onto MARIO GONZALEZ's upper back to keep him pinned in a prone position.  Roughly two minutes before MARIO GONZALEZ became unresponsive, Defendant Alameda Police Officer CAMERON LEAHY arrived on the scene and joined in, using his body weight to pin MARIO GONZALEZ's legs and back down.[1] Defendants did this despite the fact that MARIO GONZALEZ was handcuffed, non-threatening, and had committed no crime.

27.     Bodycam footage of the incident shows that Defendant FISHER consistently placed his body weight forward—on the front of his feet, not on his heels—and onto to MARIO GONZALEZ's upper back and shoulder area throughout the incident.  At times, his right foot was completely off the ground as he used his full weight to pin MARIO GONZALEZ down with his right knee.  At one point, Defendant FISHER even remarked, "he's lifting my full body weight up." As those officers kept MARIO GONZALEZ in a dangerous, asphyxiating position for over five minutes in total, MARIO GONZALEZ struggled to breathe.  He made several guttural yells and whimpers, and was clearly in distress as the Defendant officers refused to relent and continued to interrogate him about his identity.  During all of this, MARIO GONZALEZ squirmed around in a desperate attempt to breathe, but never attacked, threatened, or violently resisted any officer.  In fact, he even tried to answer their questions at times, whimpering "Mario" at one point when asked to confirm his name again and again.

28.     While MARIO GONZALEZ struggled to breathe during the last conscious minute of his life in an illegal and asphyxiating restraint, Defendant MCKINLEY told him "I think you just had too much to drink today."  Moments later, as MARIO GONZALEZ groaned in agony,

---

[1] Prior to Defendant LEAHY's arrival, non-Defendant Alameda Police Assistant Charlie Clemmens, a police volunteer, assisted Defendants MCKINLEY and FISHER by holding down MARIO GONZALEZ's legs while MARIO GONZALEZ was on the ground in a prone position.

Defendant FISHER—audibly winded from forcefully keeping MARIO GONZALEZ in a prone position for over five minutes—asked if they should roll MARIO GONZALEZ onto his side. Defendant LEAHY replied "No, I don't wanna lose what I got, man."  Moments later, just before apparently realizing MARIO GONZALEZ was unresponsive, Defendant FISHER inquired for the first time, "Do we have no weight on his chest?"  Then, he observed Defendant MCKINLEY and instructed, "No, no. No, no. No weight, no weight."  (As noted, throughout Defendants' prone restraint of MARIO GONZALEZ, they collectively kept a very substantial amount of weight on the back of his chest, shoulders, and abdomen).  Around that point, MARIO GONZALEZ had stopped moving.  When Defendant FISHER finally stopped using his knee to apply his weight onto MARIO GONZALEZ's upper back and neck area, Defendants rolled MARIO GONZALEZ over and found him limp and unresponsive.  He would soon die from Defendants' use of excessive force, improper restraint, mechanical asphyxia, and positional, restraint, and compression asphyxiation of him.

29.     During substantial periods of time, Defendants MCKINLEY, FISHER, and LEAHY each kept their own body weight on MARIO GONZALEZ's head, neck, shoulders, back, and legs without objectively reasonable justification, which posed a substantial risk of death or serious injury to MARIO GONZALEZ.  During those times and others, reasonable officers would have understood that they were using deadly force.  Defendants MCKINLEY, FISHER, and LEAHY, acting as integral participants, and under the totality of the circumstances, used, caused the use of, and tolerated the use of a high level of excessive and injurious force against MARIO GONZALEZ, causing his death.  The totality of the force used and tolerated by Defendants MCKINLEY, FISHER, and LEAHY was unnecessary, excessive, and deadly.  None of these officers intervened to stop this illegal seizure or to stop other officers from using the excessive and illegal force that was evident in front of them.

30.     The above-described incident was captured on video via body cameras worn by responding APD officers, including Defendants MCKINLEY and FISHER.  APD released footage of the incident from Defendant MCKINLEY's body camera to the public on April 27, 2021, after demands from MARIO GONZALEZ's family and the public.

31.     In addition to the foregoing evidence of the use of unjustified, injurious force on MARIO GONZALEZ, Defendants MCKINLEY, FISHER and LEAHY, and possibly DOE Defendants, also caused further trauma to MARIO GONZALEZ as noted in the autopsy performed on or about April 21, 2021, two days after the incident, by the Alameda County Coroner's Bureau, all evidence of these Defendants' use of a high degree of unnecessary force on MARIO GONZALEZ:

- **Blunt force injuries of head, torso, and extremities (abrasions, ecchymoses, and subcutaneous hemorrhages)**.  Specifically:
  - A  3/16 x 1/8 inch red abrasion on the right cheek;
  - A 1 inch long linear superficial abrasion on the left infraorbital cheek;
  - A 1 inch diameter faint red-brown ecchymosis in the skin of the right flank, with associated underlying mild subcutaneous hemorrhage;
  - Multiple (at least 5) superficial linear abrasions on the lower abdomen, ranging 1/8 – 1/4 inch long;
  - Two linear abrasions on the left flank, up to 1/4 inch long;
  - Multiple (at least 4) superficial linear abrasions up to 1/8 inch long on the anteromedial right wrist;
  - A 1-1/4 inch diameter red ecchymosis in the skin of the lateral right wrist;
  - An approximately 1 x 3/4 inch vague red ecchymosis in the skin of the posterior right wrist;
  - A 3/4 x 5/16 inch curvilinear band of superficially abraded red ecchymosis in the skin of the posterior proximal right hand;
  - A 1 x 1/4 inch band of red ecchymosis in the skin of the medial right wrist;
  - Two healing superficial linear abrasions on the posterior right 4th digit, up to 3/4 inch long;

- Multiple (at least 4) superficial linear abrasions on the anterior left forearm, ranging 1/4 – 3/4 inch long;
- Two focally abraded, faint, vague bands of purple ecchymoses are on the medial left wrist; the most distal band has a central area of pallor;
- A 1/2 x 1/8 inch superficial abrasion on the posterolateral left wrist;
- Multiple (at least 5) small abrasions on the posterior left hand, up to 3/16 inch in greatest dimension;
- Multiple (at least 20) superficial linear abrasions scattered on the right knee and right lower leg, ranging 1/16 – 1/2 inch long;
- Multiple (at least 15) superficial linear abrasions scattered on the proximal left thigh, left knee, and anterior lower left leg, ranging 1/16 – 1/4 inch long.

32.     The Alameda County Coroner's Bureau found "physiological stress of altercation and restraint" to be a significant condition contributing to MARIO GONZALEZ's death.  The Alameda County Coroner ruled the manner of MARIO GONZALEZ's death a "homicide," which is death at the hands of another..

33.     At all material times during his encounter with Defendants, while MARIO GONZALEZ appeared disoriented and confused, a reasonable officer would not have believed that he was a danger to himself or others.  At the time of this death, MARIO GONZALEZ had a small, recreational amount of methamphetamine in his system – in an amount far too low to cause his death.  MARIO GONZALEZ also had a history of alcohol dependency and hospitalization for alcohol withdrawal, and did not have any alcohol in his system at his time of death.

34.     At all material times, MARIO GONZALEZ did not pose a significant and/or immediate threat of death or serious physical injury to Defendants or others.  As a result of Defendants' unreasonable and excessive tactics, Defendants created the situation where excessive and deadly force was used.  Defendants' wrongful conduct was without a legitimate lawful purpose and proximately caused MARIO GONZALEZ's death.

35.     At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, purposely harmful and/or deliberately indifferent to MARIO GONZALEZ's and Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

36.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff M.G.C. sustained the following injuries and damages, past and future, among others:

      a.      Wrongful death of MARIO GONZALEZ;

      b.      Hospital and medical expenses (Survival claims);

      c.      Coroner's fees, funeral and burial expenses (Survival claims);

      d.      Loss of familial relationships, including loss of love, companionship, comfort, affection, consortium, society, services, solace, and moral support (based on wrongful death and loss of familial association);

      e.      Violation of constitutional rights;

      f.      Pain and Suffering, including emotional distress (based on individual §1983 claims for loss of familial association);

      g.      MARIO GONZALEZ's loss of life, pursuant to federal civil rights law (Survival claims);

      h.      MARIO GONZALEZ's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

      i.      All damages, penalties, and attorneys' fees and costs recoverable under 42 USC §§ 1983, 1988, 12205, California Civil Code §§ 52, and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**COUNT ONE**
**- 42 USC § 1983 –**
**PLAINTIFF AGAINST DEFENDANTS MCKINLEY, FISHER, LEAHY, AND DOES 1-10**

37.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

38.     By the actions and omissions described above, Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 violated 42 USC § 1983, depriving Plaintiff M.G.C. and/or Decedent

MARIO GONZALEZ of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to U.S. Constitution:

    a. MARIO GONZALEZ's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment; (survival and wrongful death claims);

    b. MARIO GONZALEZ's right to be free from excessive and unreasonable force in the course of a seizure, including the use of unlawful deadly force, as secured by the Fourth Amendment; (survival and wrongful death claims);

    c. The right to be free from wrongful government interference with familial relationships and Plaintiff's and Decedent's right to companionship, society and support of each other, through the use of deadly force that shocks the conscience and that is used without a legitimate law enforcement purpose, and by otherwise interfering with their familial associational rights as secured by the First and Fourteenth Amendments. (Plaintiff M.G.C.'s individual claims).

39.    Defendants subjected Plaintiff and Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of MARIO GONZALEZ, Deceased) and others would be violated by their acts and/or omissions.

40.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth at paragraph 36, above.

41.    The conduct of Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 USC § 1983 and California law.

42.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 USC § 1988 and applicable federal and California codes and laws.

**COUNT TWO**
**- 42 USC § 1983 (Municipal and Supervisory Liability) –**
**PLAINTIFF AGAINST DEFENDANTS CITY OF ALAMEDA, FORMER CITY OF ALAMEDA INTERIM POLICE CHIEF RANDY FENN, and DOES 1-10**

43.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

44.     Recently before MARIO GONZALEZ's death, two locally high-profile incidents involving APD officers had occurred: one in which a man died after APD officers placed their body weight on his back while he was in a prone position, and another involving officers using force to unlawfully seize and arrest a man who had committed no crime and posed no threat to anyone whatsoever, prompting outcry from city officials for better officer training regarding seizures and reforms in handling calls involving non-threatening individuals with mental health issues.  On December 5, 2018, Navy veteran Shelby Gattenby, who had Post-Traumatic Stress Disorder, died after APD officers Tased him five times and restrained him with their body weight as he lay prone on his stomach, with one officer instructing another to use his body weight to keep Mr. Gattenby on the ground.  Defendant CITY settled the matter with Mr. Gattenby's mother in March of 2020.  Then, on May 23, 2020, APD Officers approached Mali Watkins while he was dancing and exercising in his neighborhood.  The officers detained him, forced him to the ground, handcuffed him, and arrested him—all without probable cause, as later determined by the Alameda County District Attorney.  The incident prompted Alameda Councilmember John Knox-White to state, "This has shaken my confidence in the leadership we have at the Alameda Police Department."  Then-Police Chief Paul Rolleri retired two months after the incident.  Defendant JAMES FISHER was one of the responding officers to that incident, and was named as a defendant in a lawsuit filed by Mr. Watkins, which is currently pending in the Northern District.  See *Watkins v. City of Alameda, et al.*, CAND No. 4:21-cv-06080-KAW.

45.     The unconstitutional actions and/or omissions of Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10, and other officers employed by or acting on behalf of Defendant CITY, on information and belief, were pursuant to the following customs, practices, and/or procedures of Defendant CITY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officials for Defendant CITY, including Defendants FENN and DOES 1-10:

    a.     To use or tolerate the use of unlawful deadly force including permitting and training officers (i) to use deadly force when faced with less than an immediate threat of death or serious bodily injury, (ii) to use deadly force prematurely, or as a 'first resort,' or when facing a mere potential threat; and

(iii) to use deadly force without giving a proper warning when one would be feasible;

b.   To use or tolerate the use of improper prone restraint of non-threatening individuals, increasing the risk of injury and death by restraint-associated asphyxia;

c.   To fail to follow generally accepted law enforcement procedures and standards concerning handling mentally ill and/or emotionally disturbed persons;

d.   To tolerate and/or encourage officers to unlawfully seize, detain, and arrest individuals for non-criminal behavior, including mental illness or disturbance;

e.   To tolerate and/or encourage officers to fail to intervene when they should be aware that another officer is violating a person's rights;

f.   To cover-up violations of constitutional rights by any or all of the following:

   i.   by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of mentally ill or emotionally disturbed persons;

   ii.  by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

   iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct, by withholding and/or concealing material information;

g.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and APD personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;

h.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and the customs and practices described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

46.     Defendant CITY'S training programs for its officers, including Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 were clearly inadequate to address the obvious need for training concerning the customs and practices in the preceding paragraph that were likely to result in injuries, deaths, and serious violations of rights.

47.     Defendant CITY, through its employees and agents, and through its policymaking supervisors including Defendants FENN and DOES 1-10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10, and other APD personnel, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

48.     The unconstitutional actions and/or omissions of Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10, as described above, were approved, tolerated, and/or ratified by policymaking officers for Defendant CITY and the APD, including Defendants FENN and DOES 1-10.  Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to policymakers within Defendant CITY, including through videos, Defendants' statement(s), physical evidence, and other information and investigation, and that such policymakers have direct knowledge of the fact that the seizure and killing of MARIO GONZALEZ was not justified, but represented an unconstitutional use of unreasonable, excessive and deadly force.  Notwithstanding this knowledge, on information and belief, policymakers of Defendant CITY have approved of the actions and/or omissions of Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 that resulted in the death of shooting of MARIO GONZALEZ, and have made a deliberate choice to endorse the actions of those Defendants, and the bases for those actions, that resulted in the death of MARIO GONZALEZ.  By so doing, policymakers of Defendant CITY have shown affirmative agreement with the individual defendant officer's actions, and have ratified the unconstitutional acts of Defendants MCKINLEY, FISHER, LEAHY, and others.

49.     Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendants FENN, DOES 1-10 and other policy-making officers for Defendant CITY were and are aware of a custom and pattern of misconduct and injury caused by Defendant CITY law

1    enforcement officers similar to the conduct of Defendants MCKINLEY, FISHER, and LEAHY

2    described herein, but failed to discipline culpable law enforcement officers and employees and

3    failed to institute and enforce lawful and proper training, procedures and policy within the CITY.

4         50.    Defendant CITY's failure to properly and adequately hire, train, instruct, monitor,

5    supervise, evaluate, investigate, and discipline, as well as their unconstitutional customs, practices,

6    orders, approvals, ratification and toleration of wrongful conduct of Defendants MCKINLEY,

7    FISHER, LEAHY, and DOES 1–10, was a moving force and/or a proximate cause of the

8    deprivations of Plaintiff's and Decedent's clearly-established and well-settled constitutional rights

9    in violation of 42 USC § 1983, as more fully set forth in paragraphs 38, above.

10        51.    As a direct and proximate result of the unconstitutional customs, practices, deficient

11   training programs, actions, omissions, and deliberately indifferent supervision of Defendants CITY

12   and FENN, as described above, Plaintiff sustained serious and permanent injuries and is entitled to

13   damages, costs and attorneys' fees as set forth in paragraphs 40 and 42 above.

14

15                          **COUNT THREE**
                 **-- VIOLATION OF CIVIL CODE § 52.1 --**
16   **PLAINTIFF AGAINST DEFENDANTS MCKINLEY, FISHER, LEAHY, DOES 1-10, AND**
                        **CITY OF ALAMEDA**

17        52.    Plaintiff realleges each and every paragraph in this Complaint as if fully set forth

18   here.

19        53.    By their acts, omissions, customs, and policies, Defendants MCKINLEY, FISHER,

20   LEAHY, and DOES 1-10, acting as integral participants as described above, interfered with,

21   attempted to interfere with, and violated Plaintiff's and Decedent's rights under California Civil

22   Code § 52.1, and the following clearly-established rights under the United States Constitution and

23   the California Constitution (where Decedent's rights were violated, this count is brought as a

24   survival claim; where Plaintiff's rights were violated, this count is brought by Plaintiff

25   individually):

26             a.   MARIO GONZALEZ's right to be free from unreasonable searches and
                    seizures as secured by the Fourth Amendment to the United States
27                  Constitution and California Constitution, Article 1, Section 13;

28

b. MARIO GONZALEZ's right to be free from excessive and unreasonable force in the course of a seizure, including the use of unlawful deadly force, as secured by the Fourth Amendment to the United States Constitution and California Constitution, Article 1, Section 13;

c. MARIO GONZALEZ's right to be free from the use of force, including deadly force, that shocks the conscience or that is used without a legitimate law enforcement purpose as secured by the Fourteenth Amendment;

d. MARIO GONZALEZ's and Plaintiff's right to be free from wrongful government interference with familial relationships, and Plaintiff's and Decedent's right to companionship and society with each other, as secured by the First and Fourteenth Amendments;

e. MARIO GONZALEZ's right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43.

54.     Unlawful deadly force which violates the Fourth Amendment with reckless disregard for rights violates the Bane Act.[2]  Defendants' reckless use of unlawful deadly force against MARIO GONZALEZ in and of itself constitutes threat, intimidation, or coercion.  Additionally, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiff's and MARIO GONZALEZ's rights, Defendants violated Plaintiff's and MARIO GONZALEZ's rights by the following conduct constituting threat, intimidation, or coercion:

a. Threatening MARIO GONZALEZ in the absence of any threat presented by MARIO GONZALEZ, or any justification whatsoever;

b. Using deliberately reckless and provocative tactics to apprehend MARIO GONZALEZ in violation of generally accepted law enforcement training and standards, and in violation of MARIO GONZALEZ's rights;

c. Causing MARIO GONZALEZ to be asphyxiated, without warning and without justification;

d. Causing the use of conscience-shocking force against MARIO GONZALEZ, without a legitimate law enforcement purpose, thereby violating his and Plaintiff's rights to familial association;

---

[2] See Cornell v. City and County of San Francisco, 17 Cal.App.5th 766 (2017) (review denied); Reese v. County of Sacramento, 888 F.3d 1030, 1043-44 (9th Cir. 2018); Rodriguez v. County of L.A., 891 F.3d 776, 802 (9th Cir. 2018); Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105–06 (9th Cir. 2014) (citing Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013)).

e.   Threatening violence against MARIO GONZALEZ, with the apparent ability to carry out such threats, in violation of Civ. Code § 52.1(j);

f.   Causing and permitting the infliction of repeated and sustained applications of unnecessary force on MARIO GONZALEZ, by multiple officers, using force that was severe and/or deadly, over several minutes;

g.   Violating MARIO GONZALEZ's rights to be free from unlawful seizures by both wrongful arrest and excessive force.

55.   The threat, intimidation, and coercion described herein were not necessary or inherent to any legitimate and lawful law enforcement activity.

56.   Further, the violations of duties and rights by Defendants MCKINLEY, FISHER, LEAHY, and DOES 1–10, and coercive conduct described herein, were volitional acts; none was accidental or merely negligent.

57.   Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

58.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (individually and for Decedent) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at paragraphs 40-42 and punitive damages against Defendants MCKINLEY, FISHER, LEAHY, and DOES 1–10, including all damages and penalties allowed by California Civil Code §§ 52, 52.1 and California law, not limited to costs, attorneys' fees, three times actual damages, and civil penalties.  Plaintiff does not seek punitive damages against Defendant CITY.

## COUNT FOUR
## -- NEGLIGENCE; PERSONAL INJURIES --
## PLAINTIFF AGAINST ALL DEFENDANTS

59.   Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

60.   At all times, Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 owed Plaintiff and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

61.     At all times, Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 owed Plaintiff and Decedent the duty to act with reasonable care.

62.     These general duties of reasonable and due care owed to Plaintiff and Decedent by Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10 include but are not limited to the following specific obligations:

      a.     to refrain from unlawfully seizing, detaining, and/or arresting MARIO GONZALEZ;

      b.     to refrain from using excessive and/or unreasonable force against MARIO GONZALEZ;

      c.     to refrain from unreasonably creating and escalating the situation where force, including but not limited to deadly force, was used;

      d.     to refrain from using unreasonable tactics that escalated the situation, created danger, and led to the use of deadly force;

      e.     to refrain from abusing their authority granted them by law;

      f.     to refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

63.     Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendants FENN and DOES 1–10, include but are not limited to the following specific obligations:

      a.     to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline APD officers under their supervision (including MCKINLEY, FISHER, LEAHY, and other DOES 1-10) to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

      b.     to make, enforce, and at all times act in conformance with policies, training, and customs that are lawful, consistent with generally accepted law enforcement standards, and protective of individual rights, including Plaintiff's and Decedent's rights.

      c.     to refrain from making, enforcing, and/or tolerating the wrongful practices, customs, and deficient training programs set forth in COUNT TWO, above.

64.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

65.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

66.     As a direct and proximate result of Defendants' negligence, Plaintiff and Decedent sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at paragraphs 40-42, including punitive damages against Defendants MCKINLEY, FISHER, LEAHY, FENN, and DOES 1–10.  Plaintiff does not seek punitive damages against Defendant CITY or Defendant FENN in his official capacity.

**COUNT FIVE**
**-- ASSAULT AND BATTERY --**
**PLAINTIFF AGAINST DEFENDANTS MCKINLEY, FISHER, LEAHY,**
**DOES 1-10, AND CITY OF ALAMEDA**

67.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

68.     The actions and omissions of Defendants MCKINLEY, FISHER, LEAHY, and DOES 1–10 as set forth above constitute assault and battery.

69.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

70.     As a direct and proximate result of the assault and battery of by Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above at paragraphs 40-42, including punitive damages against Defendants MCKINLEY, FISHER, LEAHY, and DOES 1–10.  Plaintiff does not seek punitive damages against Defendant CITY.

**COUNT SIX**
**-- FALSE ARREST AND IMPRISONMENT --**
**PLAINTIFF AGAINST DEFENDANTS MCKINLEY, FISHER, LEAHY,**
**DOES 1-10, AND CITY OF ALAMEDA**

71.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

72.     At no time during the events described above, and at all other pertinent times, did Defendants MCKINLEY, FISHER, LEAHY, or DOES 1-10 have a warrant for the arrest of MARIO GONZALEZ, nor did Defendants have any facts or information that constituted probable cause that MARIO GONZALEZ had committed or was about to commit a crime.  Defendants also lacked reasonable suspicion to detain MARIO GONZALEZ once confirming that he had not stolen anything from nearby stores, and Defendants were not engaged in any lawful investigative detention of MARIO GONZALEZ.

73.     Defendants, and each of them, intentionally and unlawfully exercised force to restrain, detain, and confine MARIO GONZALEZ, putting restraint on MARIO GONZALEZ's freedom of movement, and compelled MARIO GONZALEZ to remain and/or move against his will.  Defendants authorized, directed, and assisted in procuring, without process, MARIO GONZALEZ's unlawful arrest and imprisonment.

74.     The actions and omissions of Defendants MCKINLEY, FISHER, LEAHY, and DOES 1–10 as set forth above constitute assault and battery.

75.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

76.     As a direct and proximate result of the assault and battery of by Defendants MCKINLEY, FISHER, LEAHY, and DOES 1-10, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above at paragraphs 40-42, including punitive damages against Defendants MCKINLEY, FISHER, LEAHY, and DOES 1–10.  Plaintiff does not seek punitive damages against Defendant CITY.

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

a.    Declaratory relief, finding that Defendants violated Plaintiff's and Decedent's rights, to serve the purposes of 42 U.S.C. § 1983, Cal. Code of Civ. Proc. § 1021.5, and Cal. Civil Code §§ 52 and 52.1, including for vindication of Constitutional and other rights as "Private Attorney General," elucidation of those rights for the courts, the public, and government officials, and to deter similar wronging by the Defendants and other officials;

b.    compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

c.    punitive damages under 42 USC § 1983 and California law in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against the CITY or FENN in his official capacity);

d.    all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 USC §§ 1983, 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., and 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

e.    Injunctive relief, including but not limited to the following:

     i.    an order prohibiting Defendants from engaging in the unconstitutional or unlawful customs, policies, practices, procedures, training and supervision as may be determined and/or adjudged by this case;

     ii.    an order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for the use of restraints and deadly force;

     iii.    an order prohibiting Defendants and their police officers from engaging in a "code of silence" as may be supported by the evidence in this case;

     iv.    an order requiring Defendants to train all APD officers concerning generally accepted and proper tactics and procedures and this Court's orders concerning the issues raised in Count 2 and injunctive relief requests i-iii, above;

f.    such other and further relief as this Court may deem appropriate.

DATED: January 10, 2022              HADDAD & SHERWIN LLP

                                   */s/ Michael J. Haddad*

                                   Michael J. Haddad
                                   Attorneys for Plaintiff

1

2    DATED: January 10, 2022              HADDAD & SHERWIN LLP

3                                         */s/ Julia Sherwin*
4                                         Julia Sherwin
                                          Attorneys for Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>JURY DEMAND</u>**

2

Plaintiff hereby requests a trial by jury.

3

4   DATED: January 10, 2022                 HADDAD & SHERWIN LLP

5                                           */s/ Michael J. Haddad*
                                            Michael J. Haddad
6                                           Attorneys for Plaintiff

7

8   DATED: January 10, 2022                 HADDAD & SHERWIN LLP

9                                           */s/ Julia Sherwin*
                                            Julia Sherwin
10                                          Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28