MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
TERESA ALLEN (State Bar No. 264865)
BRIAN HAWKINSON (State Bar No. 341856)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Facsimile:  (510) 452-5510

Attorneys for Plaintiff M.G.C. and
Mario Gonzalez, Deceased

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO GONZALEZ, Deceased, through his Successor in Interest, M.G.C., a minor through his mother and Next Friend Andrea Cortez, individually and as successor in interest for MARIO GONZALEZ, Deceased,<br><br>　　　　　　　Plaintiff,<br>vs.<br><br>CITY OF ALAMEDA, a public entity; FORMER CITY OF ALAMEDA INTERIM POLICE CHIEF RANDY FENN, in his individual and official capacities; ALAMEDA POLICE OFFICERS ERIC MCKINLEY, JAMES FISHER, and CAMERON LEAHY, and DOES 1-10, Jointly and Severally,<br><br>　　　　　　　Defendants. | Case No.: 4:21-cv-09733-DMR<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  March 30, 2022<br>Time:  1:30 p.m.<br>Courtroom:  4, 3rd Floor (Oakland)<br>Judge:  Hon. Donna M. Ryu |

No. 4:21-cv-09733-DMR:  JOINT CASE MANAGEMENT STATEMENT

Pursuant to Federal Rule of Civil Procedure 16(a) and Civil Local Rule 16-9 of the U.S. District Court for the Northern District of California, this Joint Case Management Statement is jointly submitted by the following parties: Plaintiff M.G.C., a minor, by and through his mother and Next Friend Andrea Cortez, individually and on behalf of Mario Gonzalez (deceased); Defendants City of Alameda, Alameda Interim Chief of Police Randy Fenn, and Alameda Police Officers Eric McKinley, James Fisher, and Cameron Leahy.

1.   **JURISDICTION AND SERVICE**

This is a civil rights, wrongful death, and survival action arising under 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.  Plaintiff asserts that this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  Plaintiff has filed Waivers of Service executed by Defendants, and all named Defendants have appeared in the case.

2.   **FACTS**

   a.   **Plaintiff's Statement:**

This is a civil rights, wrongful death, and survival action arising from the unreasonable and excessive use of force by Defendants Eric McKinley, James Fisher, and Cameron Leahy, resulting in the wrongful death of Mario Gonzalez.

On April 19, 2021, on or around 10:20 a.m., a resident of Alameda, CA, placed a call for service with APD about Mario Gonzalez's lawful presence in Scout Park, a small public park located across the sidewalk from the caller's home.  The caller stated there was a man (Mario Gonzalez) talking to himself and not making any sense, standing near the caller's front yard fence. The caller stated that the man was Hispanic and was not doing anything wrong, but that the man's presence was scaring the caller's wife.  Shortly thereafter, another resident called APD to report a similarly described man at Scout Park who appeared to be breaking security tags off alcohol bottles in his possession.

 Defendant APD Officer Eric McKinley arrived at Scout Park roughly 20 minutes after the first call for service, and encountered Mario Gonzalez peacefully standing in the park.  Defendant

McKinley had no information that Mario Gonzalez was involved in any crime. Defendant McKinley asked Mr. Gonzalez if he was alright, and Mr. Gonzalez stated he was but added that he did not know what was going on. Mr. Gonzalez appeared confused, and possibly intoxicated, throughout his interaction with Defendants. Defendant McKinley questioned Mr. Gonzalez about his name and what he was doing in the park, and other questions. Mr. Gonzalez remained calm and polite as he talked with Defendant McKinley, but also had difficulty maintaining his focus, often becoming distracted or trailing off during his answers. Roughly two minutes into the encounter, seeing Walgreen's basket with liquor bottles on the ground nearby, Defendant McKinley instructed Defendant APD Officer James Fisher, who had not yet arrived on the scene, via radio to check with employees at the Walgreen's Drug Store across the street from Scout Park regarding whether anyone had recently walked off with stolen alcohol or merchandise. Roughly two minutes and thirty seconds later, Defendant Fisher notified Defendant McKinley via radio that Walgreen's had not had anyone walk off with stolen merchandise. Defendant McKinley continued to detain and question Mr. Gonzalez despite that he was not in need of any assistance and despite that Defendant McKinley had developed no facts or reasonable suspicion that Mr. Gonzalez was involved in any crime.

Roughly seven minutes after Defendant McKinley first encountered Mr. Gonzalez, Defendant Fisher arrived on the scene. The two officers continued to demand Mr. Gonzalez's name and whether he had any identification. About two minutes after Defendant Fisher's arrival, Defendants McKinley and Fisher—without reasonable suspicion, probable cause, or any legal basis—escalated the otherwise calm interaction by using force, each grabbing one of Mr. Gonzalez's arms and trying to force them behind his back through the use of pain compliance holds. Based on officers' body camera videos, Mr. Gonzalez appeared to flinch and stiffen his arms as Defendants tried to force them behind his back, despite having no lawful cause to arrest him. Still, Mr. Gonzalez did not actively or aggressively resist, remained non-threatening, and maintained a benign tone with Defendants.

After failing to strong-arm Mr. Gonzalez into handcuffs, Defendants McKinley and Fisher

1  forcefully took Mr. Gonzalez to the ground, where they quickly pinned him face-down and on his
2  stomach in a prone position.  Defendant McKinley climbed on top of Mr. Gonzalez's legs while
3  retaining control of Mr. Gonzalez's left arm, while Defendant Fisher got on top of Mr. Gonzalez's
4  back and wrested Mr. Gonzalez's right arm out from underneath his body.  Defendants kept Mario
5  Gonzalez in a prone position with substantial weight on his back, and in multiple pain compliance
6  holds, while handcuffing him.  After roughly two minutes, during which time Defendant Fisher was
7  on top of Mr. Gonzalez's back, Defendant Fisher handcuffed Mr. Gonzalez and Defendant
8  McKinley locked the handcuffs.  Defendant Fisher then rested, still on top of Mr. Gonzalez's back,
9  for roughly 30 seconds, then shifted his positioning, placing his knee onto Mr. Gonzalez's upper
10 back and shoulder area and applying significant body weight to keep Mr. Gonzalez, now
11 handcuffed, pinned down in a prone position.  Defendant McKinley held Mr. Gonzalez down by his
12 left elbow so he could not roll over.  Defendants McKinley and Fisher continued to forcefully pin
13 Mr. Gonzalez on the ground, handcuffed and in a prone, asphyxiating position for nearly three
14 additional minutes.  During that time, Defendant Fisher used his body weight, applied through his
15 knee, elbows, forearms, and hands, to keep Mr. Gonzalez pinned down.  Roughly two minutes
16 before Mr. Gonzalez became unresponsive, Defendant Leahy arrived on the scene and joined in,
17 using his body weight to pin Mr. Gonzalez's legs and back down.
18       APD bodycam footage of the incident shows that Defendant Fisher consistently placed his
19 body weight forward—on the front of his feet, and not on his heels—and onto Mr. Gonzalez's
20 upper back and shoulders throughout the incident.  At one point, Defendant Fisher even remarked,
21 "he's lifting my full body weight up."  As Mr. Gonzalez increasingly struggled to breath in a
22 dangerous, asphyxiating position for over five minutes in total, he made several whimpers and
23 guttural yells, and was clearly in distress.  Despite squirming around in a desperate attempt to
24 breath, Mr. Gonzalez never attacked, threatened, or violently resisted any officer.  During the last
25 conscious minute of Mr. Gonzalez's life, Defendant McKinley told him, "I think you just had too
26 much to drink today."  Moments later, Defendant Fisher—winded from forcefully using his body
27 weight to keep Mr. Gonzalez in a prone position—asked Defendants McKinley and Leahy if they
28

No. 4:21-cv-09733-DMR:  JOINT CASE MANAGEMENT STATEMENT                                                                3

should roll Mr. Gonzalez onto his side, to which Defendant Leahy replied, "No, I don't wanna lose what I got, man." Moments before noticing Mr. Gonzalez was unresponsive, Defendant Fisher inquired for the first time, "Do we have no weight on his chest?" Then, observing, Defendant McKinley, Defendant Fisher stated "No, no. No, no. No weight." Around that point, Mr. Gonzalez had stopped moving, and when Defendant Fisher finally stopped using his knee to pin Mr. Gonzalez down, the officers rolled Mr. Gonzalez over and found him limp and unresponsive.

Mario Gonzalez died as a result of Defendants' use of excessive force, improper restraint, mechanical asphyxia, and positional, restraint, and compression asphyxiation of him. For substantial periods of time, Defendants McKinley, Fisher, and Leahy each kept their own body weight on Mr. Gonzalez's head, neck, shoulders, back, and legs, without objectively reasonable justification, posing a substantial risk of death or injury to Mr. Gonzalez. Reasonable officers would have known such use of force was deadly. Defendants McKinley, Fisher, and Leahy, acting as integral participants and under the totality of the circumstances, used, caused the use of, and tolerated excessive, unnecessary, and deadly force against Mr. Gonzalez, causing his death. None of those officers intervened to stop this illegal seizure or to stop the other officers from using the excessive and illegal force that was evident in front of them.

Plaintiff M.G.C., Mario Gonzalez's son and only child who was four years old at the time, brings claims individually and on behalf of Mr. Gonzalez as Mr. Gonzalez's successor-in-interest for violations of rights under the United States and California Constitutions, 42 U.S.C. § 1983; California Civil Code §§ 52.1; and other provisions of California codes and law, assault and battery, false arrest, and negligence.

### b. Defendants' Statement

On April 19, 2021, shortly after 10:00 a.m., the Alameda Police Department received two calls from residents near the 800 Block of Oak Street regarding a man, later identified as Mr. Gonzalez, acting strangely and possibly in the possession of stolen property. Officer McKinley was the first to arrive and speak to the man. Mr. Gonzalez had two shopping baskets from a nearby store, one of which contained a bottle of alcohol with the security device still attached. Mr.

Gonzalez showed obvious signs of impairment. Several minutes later, Officer Fisher arrived on scene. Mr. Gonzalez was largely unresponsive to the officers' questions and a decision was made to place Mr. Gonzalez in handcuffs. Mr. Gonzalez struggled with the officers, and it took approximately two minutes to secure the handcuffs. Mr. Gonzalez then suddenly became unresponsive. Officers immediately checked his pulse and began medical aid. Mr. Gonzalez was transported to the hospital where he was later pronounced deceased.

3. **LEGAL AND FACTUAL ISSUES:** The principle legal and factual issues in dispute include the following:

   i. Whether Defendants violated Mario Gonzalez's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the U.S. Constitution;

   ii. Whether Defendants violated Mario Gonzalez's right to be free from excessive and unreasonable deadly force in the course of an arrest or detention as secured by the Fourth Amendment to the U.S. Constitution;

   iii. Whether Defendants wrongfully interfered with Plaintiff M.G.C.'s familial relationship with his father, in violation of the First and Fourteenth Amendments to the U.S. Constitution, which provide for the right to companionship, society, and support of each other free from governmental interference (per the due process standard);

   iv. Whether Defendants McKinley, Fisher, and Leahy are entitled to qualified immunity;

   v. Whether the allegedly unconstitutional actions and/or omissions of Defendants, were, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), pursuant to the customs, policies, practices, and/or procedures of Defendant City of Alameda;

   vi. Whether Defendants City of Alameda, Defendant former Chief of Police

        Randy Fenn or Does 1–10 are supervisorily liable by failing to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants McKinley, Fisher, Leahy, and Does 1–10, and other APD personnel, with deliberate indifference to Plaintiff's constitutional rights, or for their ratification of the individual officers' unlawful conduct;

    vii.    Whether, pursuant to California Civil Code § 52.1, Defendants McKinley, Fisher, Leahy, and Fenn violated Mario Gonzalez's rights with reckless disregard or by threat, intimidation, or coercion;

    viii.    Whether, pursuant to California common law, Defendants McKinley, Fisher, Leahy and Fenn were negligent;

    ix.    Whether, pursuant to California common law, Defendants McKinley, Fisher, and Leahy subjected Mario Gonzalez to assault and battery;

    x.    Whether, pursuant to California common law, Defendants McKinley, Fisher, and Leahy subjected Mario Gonzalez to false arrest or imprisonment;

    xi.    Whether Defendants have any applicable state law immunities;

    xii.    The type and amount of Plaintiff's damages;

**4.    MOTIONS:**

Defendants will not file a 12(b)(6) motion to dismiss.  The Parties have agreed that Defendants shall file their responsive pleading by May 10, 2022 in the hope that by that time, the Alameda County District Attorney's Office and the Alameda Police Department will have completed their respective criminal and administrative investigations into the death of Mario Gonzalez.  In the event that those investigations are not complete by May 1, 2022, the parties will meet and confer about whether to further continue the deadline for Defendants' responsive pleadings.  As part of that agreement, Defendants have agreed that their responsive filing will be an Answer.

Plaintiff may move for partial summary judgment based on discovery, if appropriate.  Defendants likewise will evaluate filing a motion for summary judgment and/or partial summary

judgment at the appropriate time.  The parties reserve their rights to bring all other appropriate motions.

## 5. AMENDMENT AND PLEADINGS:

Plaintiff has amended his complaint once already, pursuant to FRCP 15(a)(1), to correct a clerical error.  Plaintiff may seek leave to amend the operative complaint to add parties and/or claims should a basis for such amendment become apparent after some discovery.

## 6. EVIDENCE PRESERVATION:

The parties have agreed to preserve Electronically Stored Information (ESI) and have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues in this action, including putting Defendants on notice to preserve all incident-related ESI, including all such ESI stored on the individually-named Defendants' personal media devices, computers, email, phones, and social media.

## 7. DISCLOSURES:

The parties will serve initial disclosures on March 23, 2022, with the caveat that documents currently requiring confidentiality shall be subject to a stipulated protective order.  Because the Alameda County District Attorney's Office and APD are still conducting their criminal and administrative investigations (respectively) into this incident, the parties agreed to a Stipulated Protective Order concerning confidential documents.  The Stipulated Protective Order has been filed and is pending before this Court.

## 8. DISCOVERY:

Discovery opened on March 11, 2022, upon the parties' completion of the Federal Rule of Civil Procedure 26(f) conference.  Defendants have agreed that, upon entry of a protective order, they will provide Plaintiff with all incident-related documents in their possession or control.

The parties agree that discovery shall be conducted pursuant to the Federal Rules of Civil Procedure, except that interrogatories shall be limited to 25 *per side*, rather than per party.

## 9. CLASS ACTIONS:

This is not a class action.

**10.  RELATED CASES:**

An administrative motion to relate *Gonzalez v. City of Alameda* (4:22-cv-00718-DMR) is currently pending before this Court.  The plaintiff there is Mario Gonzalez's mother, and her causes of action arise from the same nucleus of operative facts as Plaintiff's case here.  Plaintiff M.G.C. and Defendants in this action agree that relation of these two cases would be appropriate and beneficial.

**11.  RELIEF**

Plaintiff M.G.C. seeks compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable; punitive damages under 42 U.S.C. § 1983 and California law; and all other damages, penalties, costs, interest and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Civil Code §§ 52.1 and 52 *et seq.*; California Code of Civil Procedure § 1021.5; and as otherwise may be allowed by California and/or federal law.

**12:  SETTLEMENT AND ADR:**

The Parties in both (factually related) cases have agreed to an early settlement conference with Magistrate Judge Laurel Beeler and have filed a stipulation assigning this case to Judge Beeler for the purpose of settlement.  A settlement conference with Judge Beeler is scheduled for June 8, 2022, beginning at 10:00 a.m.

**13:  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:**

Plaintiffs have consented to proceeding before a Magistrate Judge for all further proceedings.

**14.  OTHER REFERENCES:**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.  NARROWING OF ISSUES:**  None.

**16.  EXPEDITED SCHEDULE:** Not applicable

**17.  SCHEDULING:**

The parties do not currently agree on a proposed case schedule.

      Defendants propose to revisit a schedule at the next case management conference.  The parties are available for further case management conference in July 2022, after the settlement conference.

      Plaintiff proposes that, given the severe court backlogs due to the COVID-19 pandemic, it is preferable to set a schedule now that takes into account the parties' planned June, 2022, early settlement conference with Judge Beeler.  Plaintiff therefore proposes the following case schedule:

      a.    Fact discovery cutoff: January 27, 2023

      b.    Expert disclosure deadline: February 24, 2023

      c.    Rebuttal expert disclosure deadline: March 10, 2023

      d.    Last day to file dispositive motions: March 16, 2023

      e.    Oppositions to dispositive motions due: April 6, 2023

      f.    Dispositive motion hearing: April 27, 2023

      g.    Completion of expert discovery: June 9, 2023

      h.    Pretrial conference (subject to Court's availability): August 3, 2023

      i.    Trial date (subject to Court's availability): August 21, 2023

**18.    TRIAL**

      All parties have requested a jury trial in this case.  The parties estimate that a jury trial is expected to take approximately 10 full court days.

**19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:**

      The parties are unaware of any non-parties whose interests could be substantially affected by the outcome of the proceeding.

**20.    PROFESSIONAL CONDUCT:**

      All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

      **21.    OTHER MATTERS:** None

| | | |
|---|---|---|
| 1 | DATED:  March 23, 2022 | HADDAD & SHERWIN LLP |
| 2 | | /s/ *Brian Hawkinson* |
| 3 | | BRIAN HAWKINSON |
| 4 | | Attorneys for Plaintiff |
| 6 | DATED:  March 23, 2022 | ALLEN, GLAESSNER, HAZELWOOD & WERTH |
| 7 | | /s/ *Patrick D. Moriarty* |
| 8 | | PATRICK D. MORIARTY |
| | | Attorneys for Defendants |

**PROPOSED ORDER**

Based on the Joint Case Management Statement submitted by the Parties, this Court hereby adopts the following as its order in this matter:

**IT IS SO ORDERED.**

DATED: _____     _____
HON. DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE